IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ANDREW DOMINGUEZ,<br><br>Petitioner,<br><br>vs.<br><br>CHARLES L. RYAN, et al.,<br><br>Respondents. | No. CV 08-499-PHX-DGC (BPV)<br><br>**REPORT AND**<br>**RECOMMENDATION** |

On April 8, 2008, Petitioner, Andrew Dominguez filed a *pro se* Petition for Writ of Habeas Corpus by a Person in State Custody ("Petition"), pursuant to Title 28, U.S.C. § 2254. (Doc. No. 1.)[1] Respondents filed an Answer with attached exhibits A-M. (Doc. No. 11) The Magistrate Judge granted Petitioner's request for an evidentiary hearing and appointed counsel for Petitioner. (Doc. No. 17) Respondents submitted exhibits 1-13 in advance of the hearing (Doc. No. 27), and moved to supplement the Answer with exhibits N-S and submit on the record (Doc. No. 28).

On April 5, 2010, the Magistrate Judge granted Respondents' motion for submission on the record, vacated the evidentiary hearing, and took the matter under advisement. (Doc. No. 33.)

---

[1] "Doc. No." refers to documents in this Court's file.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

   A.   State Court Case CR 2003-024106

Petitioner was represented by the same trial attorney, Ms. Stephanie Conlon, in two state criminal cases. Petitioner was out of custody in CR2003-024106 ("'024106") pending trial at the time he committed the present offense, and was represented by Ms. Conlon in both cases.

   B.   Indictment, Trial and Sentencing

On August 10, 2004, Andrew Dominguez was charged in Arizona Superior Court, Maricopa County, with theft of means of transportation, a class 3 felony, alleged to have occurred on May 11, 2004. (Answer, Ex. A.) A jury found Petitioner guilty of the charge on December 2, 2004 (Answer, Ex. B), and on January 6, 2005, the trial court sentenced Petitioner to 11.25 years' imprisonment in the Arizona Department of Corrections ("DOC"). (Answer, Ex. C.)

   C.   Appeal

Dominguez, through counsel, filed an appeal arguing that there was insufficient evidence to support a conviction of theft for means of transportation. (Answer, Ex. D.) On April 25, 2006, the Arizona Court of Appeals affirmed Dominguez's conviction and sentence in an unpublished memorandum decision. (Answer, Ex. E.) Dominguez filed a *pro se* petition for review. (Answer, Ex. F.) On August 17, 2006, the Arizona Supreme Court denied review. (Answer, Ex. G.)

   D.   First Petition for Post-Conviction Relief

On August 25, 2006, Dominguez filed a notice of post-conviction relief. (Answer, Ex. H.) Dominguez filed a *pro se* petition for post-conviction relief on January 5, 2007. (Answer, Ex. I.) Dominguez raised the claim that his trial counsel was ineffective when she failed to investigate Dominguez's mental illness. (*Id.*) On May 16, 2007, "no good cause appearing" the trial court denied the post-conviction petition. (Answer, Ex. J.) Dominguez filed a petition for review on May

30, 2007. (Answer, Ex. K.) The court of appeals denied review on February 5, 2008. (Answer, Ex. L.)

### E. Federal Habeas Petition

Dominguez filed this petition for writ of habeas corpus in District Court on April 8, 2008. (Doc. No. 1.) Petitioner raises two grounds for relief. In Ground I, he alleges that counsel rendered ineffective assistance by failing to investigate his mental condition and that, as a consequence, Petitioner was incompetent at trial and during plea negotiations. In Ground II, Petitioner alleges counsel's ineffective assistance deprived him of his Sixth and Fourteenth Amendment rights to a fair trial.

## II. DISCUSSION

### A. Standard of Review

Because Petitioner filed his petition after April 24, 1996, this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d) ("AEDPA").

### B. Statute of Limitations

A one year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court. 28 U.S.C. § 2244(d)(1).

### C. Exhaustion of State Remedies

Before a federal court may review a petitioner's claims on the merits, a petitioner must exhaust his state remedies, which means he must have presented in state court every claim raised in his federal habeas petition. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (a state prisoner in a federal habeas action must exhaust his federal claims in the state courts "by invoking one complete round of the State's established appellate review process" before he may submit those claims in a federal habeas petition) Exhaustion of state remedies is required in order

to give the state the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted). To meet the exhaustion requirement, the petitioner must have "fairly present [ed] his claim in each appropriate state court ... thereby alerting that court to the federal nature of the claim." *Baldwin*, 541 U.S. at 29; *see also Duncan v. Henry*, 513 U.S. 364, 365-66 (1995). A petitioner fairly presents a claim to the state court by describing the factual or legal bases for that claim and by alerting the state court "to the fact that the ... [petitioner is] asserting claims under the United States Constitution." *Duncan*, 513 U.S. at 365-366. *See also Tamalini v. Stewart*, 249 F.3d 895, 898 (9th Cir.2001) (same). Mere similarity between a claim raised in state court and a claim in a federal habeas petition is insufficient. Duncan, 513 U.S. at 365-366. A petitioner does not ordinarily "fairly present" a federal claim to a state court if that court must read beyond a petition, brief, or similar papers to find material that will alert it to the presence of a federal claim. *Baldwin*, 541 U.S. at 32-33 (rejecting contention that petition fairly presented federal ineffective assistance of counsel claim because "ineffective" is a term of art in Oregon that refers only to federal law claims, since petitioner failed to demonstrate that state law uses "ineffective assistance" as referring only to federal law rather than a similar state law claim); *Harless*, 459 U.S. at 6 (holding that mere presentation of facts necessary to support a federal claim, or presentation of state claim similar to federal claim, is insufficient; petitioner must fairly present the substance of the federal claim); *Hiivala v. Wood*, 195 F.3d 1098 (9th Cir. 1999) (holding that petitioner failed to exhaust federal due process issue in state court because petitioner presented claim in state court only on state grounds); *Gatlin v. Madding*, 189 F.3d 882 (9th Cir. 1999) (holding that petitioner failed to "fairly present" federal claim to state courts where he failed to identify the federal legal basis for his claim).

In Arizona, exhaustion is satisfied if a claim is presented to the Arizona Court of Appeals. A discretionary petition for review to the Supreme Court of Arizona is not necessary for purposes of federal exhaustion. *Swoopes*, 196 F.3d at 1010; *State v. Sandon*, 161 Ariz. 157, 777 P.2d 220 (1989) (in non-capital cases, state remedies are exhausted by review by the court of appeals); *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005) (quoting *Swoopes* for assertion that in cases not carrying a life sentence or the death penalty, "claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them"). Contrary to Respondents' assertion, in Arizona, unless a prisoner has been sentenced to death, the "highest court" requirement is satisfied if the petitioner has presented his federal claim to the Arizona Court of Appeals either on direct appeal or in a petition for post-conviction relief. *See Crowell v. Knowles*, 483 F.Supp.2d 925 (D.Ariz.2007)(discussing *Swoopes* v. Sublett, 196 F.3d 1008, 1010 (9th Cir, 1999).

In some instances a claim can be technically exhausted even though the state court did not address the merits. This situation is referred to as "procedural bar" or "procedural default." *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991)("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him."). A claim is procedurally defaulted if the state court declined to address the issue on the merits for procedural reasons such as waiver or preclusion. *Ylst v. Nunnemaker*, 501 U.S. 797, 802-805 (1991); *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir.2002). The Ninth Circuit Court of Appeals has explained the distinction between exhaustion and procedural default as follows:

> The exhaustion requirement is distinct from the procedural default rule. The exhaustion doctrine applies when the state court has never been presented with an opportunity to consider a petitioner's claims

> and that opportunity may still be available to the petitioner under
> state law. In contrast, the procedural default rule barring
> consideration of a federal claim applies only when a state court has
> been presented with the federal claim, but declined to reach the issue
> for procedural reasons, or if it is clear that the state court would hold
> the claim procedurally barred. Thus, in some circumstances, a
> petitioner's failure to exhaust a federal claim in state court may
> *cause* a procedural default. A habeas petitioner who has defaulted his
> federal claims in state court meets the *technical* requirements for
> exhaustion; there are no state remedies any longer "available" to
> him. A federal claim that is defaulted in state court pursuant to an
> adequate and independent procedural bar may not be considered in
> federal court unless the petitioner demonstrates cause and prejudice
> for the default, or shows that a fundamental miscarriage of justice
> would result if the federal court refused to consider the claim.

*Cassett v. Stewart*, 406 F.3d 614, 621 n.5 (9th Cir. 2005) (internal quotation marks and citations omitted). In other words, a habeas petitioner's claims may be precluded from federal review in either of two ways. First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). Second, the claim may be procedurally defaulted in federal court if the petitioner failed to present the claim in a necessary state court and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id*. at 735 n.1. This is often referred to as "technical" exhaustion, because although the claim was not actually exhausted in state court, the petitioner no longer has an available state remedy.

Thus, if a claim has never been presented to the state court, a federal habeas court may determine whether state remedies remain available.[2] *See Harris v.*

---

[2] The Ninth Circuit has suggested that, under Ariz.R.Crim.P. 32.2, there are exceptions to the rule that a district court can decide whether state remedies remain available for claims that require a knowing, voluntary, and intelligent waiver. *See Cassett v. Stewart*, 406 F.3d 614 (9th Cir.2005). The issue of waiver must be affirmatively raised by the petitioner. *See Beaty v. Stewart*, 303

-6-

*Reed*, 489 U.S. 255, 263 n.9 (1989); *Franklin*, 290 F.3d at 1231. If a claim is procedurally defaulted, it may not be considered by a federal court unless the petitioner demonstrates cause and prejudice to excuse the default in state court, or demonstrates that a fundamental miscarriage of justice would result. *Id*. at 750; *Sawyer v. Whitley*, 505 U.S. 333, 338-339 (1992).

### D. Standard of Review: Merits

Petitioner's habeas claims are governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA established a "substantially higher threshold for habeas relief" with the "acknowledged purpose of 'reduc[ing] delays in the execution of state and federal criminal sentences.' " *Schriro v. Landrigan*, 550 U.S. 465, 473-475 (2007) (quoting *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)). The AEDPA's " 'highly deferential standard for evaluating state-court rulings' ... demands that state-court decisions be given the benefit of the doubt ." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (quoting *Lindh*, 521 U.S. at 333 n. 7).

Under the AEDPA, a petitioner is not entitled to habeas relief on any claim "adjudicated on the merits" by the state court unless that adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

---

F.3d 975, 987 & n. 5 (9th Cir.2002).

-7-

The phrase "adjudicated on the merits" refers to a decision resolving a party's claim which is based on the substance of the claim rather than on a procedural or other non-substantive ground. *Lambert v. Blodgett*, 393 F.3d 943, 969 (9th Cir. 2004). The relevant state court decision is the last reasoned state decision regarding a claim. *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)); *Insyxiengmay v. Morgan*, 403 F.3d 657, 664 (9th Cir. 2005).

"The threshold question under AEDPA is whether [the petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final." *Williams v. Taylor*, 529 U.S. 362, 390 (2000). Therefore, to assess a claim under subsection (d)(1), the Court must first identify the "clearly established Federal law," if any, that governs the sufficiency of the claims on habeas review. "Clearly established" federal law consists of the holdings of the Supreme Court at the time the petitioner's state court conviction became final. *Williams*, 529 U.S. at 365; *see Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003). Habeas relief cannot be granted if the Supreme Court has not "broken sufficient legal ground" on a constitutional principle advanced by a petitioner, even if lower federal courts have decided the issue. *Williams*, 529 U.S. at 381; *see Musladin*, 549 U.S. at 77; *Casey v. Moore*, 386 F.3d 896, 907 (9th Cir. 2004). Nevertheless, while only Supreme Court authority is binding, circuit court precedent may be "persuasive" in determining what law is clearly established and whether a state court applied that law unreasonably. *Clark*, 331 F.3d at 1069.

The Supreme Court has provided guidance in applying each prong of § 2254(d)(1). The Court has explained that a state court decision is "contrary to" the Supreme Court's clearly established precedents if the decision applies a rule that contradicts the governing law set forth in those precedents, thereby reaching a

-8-

conclusion opposite to that reached by the Supreme Court on a matter of law, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result. *Williams*, 529 U.S. at 405-06; *see Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). In characterizing the claims subject to analysis under the "contrary to" prong, the Court has observed that "a run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court cases] to the facts of the prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." *Williams*, 529 U.S. at 406; *see Lambert*, 393 F.3d at 974.

Under the "unreasonable application" prong of § 2254(d)(1), a federal habeas court may grant relief where a state court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. For a federal court to find a state court's application of Supreme Court precedent "unreasonable" under § 2254(d)(1), the petitioner must show that the state court's decision was not merely incorrect or erroneous, but "objectively unreasonable." *Id.* at 409; *Landrigan*, 550 U.S. at 473; *Visciotti*, 537 U.S. at 25.

Under the standard set forth in § 2254(d)(2), habeas relief is available only if the state court decision was based upon an unreasonable determination of the facts. *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (*Miller-El II*). A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322, 340 (2003) (*Miller-El I*); *see Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004). In considering a challenge under § 2254(d)(2), state court factual determinations are presumed to be correct,

and a petitioner bears the "burden of rebutting this presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Landrigan*, 550 U.S. at 473-74; *Miller-El II*, 545 U.S. at 240. However, it is only the state court's factual findings, not its ultimate decision, that are subject to § 2254(e)(1)'s presumption of correctness. *Miller-El I*, 537 U.S. at 341-42 ("The clear and convincing evidence standard is found in § 2254(e)(1), but that subsection pertains only to state-court determinations of factual issues, rather than decisions.").

As the Ninth Circuit has noted, application of the foregoing standards presents difficulties when the state court decided the merits of a claim without providing its rationale. *See Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003); *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002); *Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000). In those circumstances, a federal court independently reviews the record to assess whether the state court decision was objectively unreasonable under controlling federal law. *Himes*, 336 F.3d at 853; *Pirtle*, 313 F.3d at 1167. Although the record is reviewed independently, a federal court nevertheless defers to the state court's ultimate decision. *Pirtle*, 313 F.3d at 1167 (citing *Delgado*, 223 F.3d at 981-82); *see also Himes*, 336 F.3d at 853. Only when a state court did not decide the merits of a properly raised claim will the claim be reviewed de novo, because in that circumstance "there is no state court decision on [the] issue to which to accord deference." *Pirtle*, 313 F.3d at 1167; *see also Menendez v. Terhune*, 422 F.3d 1012, 1025-26 (9th Cir. 2005); *Nulph v. Cook*, 333 F.3d 1052, 1056-57 (9th Cir. 2003).

### III. ANALYSIS

#### A. Timeliness

Respondents do not contest the timeliness of the habeas petition. Based on a review of the record, the Court finds that the petition is timely under 28 U.S.C. § 2244(d)(1)(A).

-10-

B. Exhaustion/Procedural Default

*1. Ground I*

Petitioner asserts in Ground I that trial counsel was ineffective when she failed to investigate Mr. Dominguez's mental illness. (Petition at 6.) Respondents concede that Dominguez presented the factual basis for this claim in state court in his petition for post-conviction relief, but argue that he did not properly exhaust the claim because he did not present it to the State's highest court. (Answer, at 12.) The Court finds that Dominguez properly exhausted the claim by raising it in his petition for review of the trial court's denial of his petition for post-conviction relief presented to the Arizona Court of Appeals. (Answer, Ex. K.) "Arizona has declared that its complete round [of appellate review] does not include discretionary review before the Arizona Supreme Court." *Swoopes*, 940 F.3d 1308; *See also Crowell v. Knowles*, 483 F.Supp.2d 925 (D.Ariz. 2007) (discussing *Swoopes*). Thus, contrary to Respondents' assertion, *Baldwin* does not require a non-capital prisoner in Arizona, such as Petitioner, to present his claims to the Arizona Supreme Court.

*2. Ground II*

Petitioner argues in his second claim that "Counsel's constitutional[ly] deficient representation deprived Mr. Dominguez of his Sixth and Fourteenth Amendment Right to a fair trial." (Petition at 7.) Dominguez argues that because his mental illness was not investigated by counsel, he was forced to proceed through the trial when he was incompetent to stand trial. (*Id.*) Respondents assert that this claim is being raised for the first time in this federal habeas petition, that Petitioner did not present both the factual and federal constitutional basis to the state courts in a procedurally appropriate manner. (Answer, at 18.) Petitioner asserted in his petition for review of the trial court's denial of his petition for post-conviction relief presented to the Arizona Court of Appeals that the issues decided

1 by the trial court and presented for review included "[c]ounsel's constitutionally
2 deficient representation deprived Mr. Dominguez his Sixth and Fourteenth
3 Amendment right to a fair trial." (Answer, Ex. K.) Petitioner argued that because
4 counsel failed to investigate Petitioner's mental illness, counsel therefore neglected
5 to pursue a potentially successful defense or determination whether the Petitioner
6 was competent during the plea bargain stage or trial. Petitioner asserted that a
7 "reasonable probability existed of a different outcome of the instant case. Had Mr.
8 Dominguez's cognitive abilities been intact he could have made a rational choice
9 about whether to accept or reject the State's plea offer or proceed to trial. A
10 reasonable probability existed had Mr. Dominguez['s] mental illness been
11 presented to the jury the jury could have found Mr. Dominguez lacked the required
12 intent to commit the present offense." (*Id*.) Petitioner stated in his petition for
13 review that, during the trial, his attorney, Ms. Conlon, was aware that Petitioner's
14 mental state was in question, that in a prior case his ability to stand trial or accept a
15 plea was questioned although he had been found competent. (*Id*.) Petitioner stated
16 that during Ms. Conlon's representation, he complained to counsel that he was
17 hearing voices, and had written a letter to attorney Brent E. Graham informing him
18 he was having problems with hearing voices. (*Id*.) Petitioner further stated that at
19 the criminal settlement conference, his cognitive abilities "were not functioning,"
20 that he could not remember critical facts concerning his case, that he was willing
21 to spend as much as three times the amount in prison as what was offered in the
22 plea agreement even after admitting there was no conflict in the evidence against
23 him. (*Id*.) Finally, Petitioner stated that after sentencing and subsequent
24 imprisonment, he continued to suffer the same psychiatric illnesses that brought
25 him before the court, and was being medicated by ADC to treat his schizophrenia
26 and its symptoms. (*Id*.) All of these assertions were initially presented in
27 Petitioner's Affidavit Under Oath, signed by Petitioner, and submitted with his
28

petition for post-conviction relief to the trial court. Petitioner further stated that the transcript at sentencing demonstrates that the prosecutor made accurate observations of Petitioner's mental condition, observing that Petitioner didn't understand the basic rational or theory of life, or why Petitioner goes about doing the things he does. (*Id*.) The Court finds, based on these factual assertions, and arguments raised before both the trial court and the court of appeals, that Petitioner exhausted both the factual and legal basis for his claims in state court in a procedurally appropriate manner.

C. Merits

Though Petitioner raises two grounds for relief, they are essentially one claim for ineffective assistance of counsel. Petitioner alleges counsel's failure to investigate Petitioner's mental illness deprived Petitioner of a fair trial because he was incompetent to stand trial. (Doc. No. 1, p.6-7.)

Because neither the trial court, nor the court of appeals provided a reasoned decision for rejecting Petitioner's claim, this Court independently reviews the record to assess whether the state court decision was objectively unreasonable under controlling federal law, with deference given to state court's ultimate decision. *Himes*, 336 F.3d at 853; *Pirtle*, 313 F.3d at 1167.

The Sixth Amendment guarantees the right to effective assistance of counsel in criminal prosecutions. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (Sixth Amendment right to counsel is right to effective assistance of counsel). In *Strickland v. Washington*, the Supreme Court established a two-prong test to evaluate ineffective assistance claims. 466 U.S. 668, 687 (1984). To obtain reversal of a conviction under the *Strickland* standard, the defendant must demonstrate two things. First, the defendant must show that his attorney's performance "fell below an objective standard of reasonableness." *Id*., 466 U.S. at 688. Second, the defendant must show prejudice. *Id*., 466 U.S. at 687. To show

1 prejudice defendant must demonstrate "a reasonable probability that, but for
2 counsel's unprofessional errors, the result of the proceeding would have been
3 different." *Id*., at 694. Petitioner argues in his federal habeas petition that counsel
4 was "ineffective when she failed to investigate Mr. Dominguez's mental illness"
5 and counsel's deficient representation "deprived Mr. Dominguez of his Sixth and
6 Fourteenth Amendment right to a fair trial." (Doc. No. 1, p.6-7.)

       *1.     Performance*

"Trial counsel has a duty to investigate a defendant's mental state if there is evidence to suggest that the defendant is impaired." *Douglas v. Woodford*, 316 F.3d 1079, 1085 (9th Cir.2003)(citing *Bean v. Calderon*, 163 F.3d 1073, 1077 (9th Cir. 1998). Although no particular facts signal incompetence, suggestive evidence includes a defendant's demeanor before the trial court, previous irrational behavior and available medical evaluations. *See United States v. Loyola-Dominguez*, 125 F.3d 1315, 1318 (9th Cir.1997) (citing *Drope v. Missouri,* 420 U.S. 162, 171 (1975); *United States v. Lewis*, 991 F.2d 524, 527 (9th Cir. 1993); and *Harding v. Lewis*, 834 F.2d 853, 856 (9th Cir. 1987)).

This Court previously found:

> It is unclear in this case whether counsel's failure to conduct any investigation into Petitioner's competency was objectively reasonable in light of professional norms, given the state court's failure to provide factual findings or explain the reasoning behind its decision, and the lack of an evidentiary hearing in the trial court.

(Doc. No. 17.)

Contrary to this Court's previous finding, however, the expanded record now adequately details counsel's performance, and the merits of Petitioner's claim can be resolved without further evidentiary development. Because the ineffective assistance of counsel claim can be "resolved by reference to the state court record," further evidentiary development is not warranted. *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998); *see Griffey v. Lindsey*, 345 F.3d 1058, 1067 (9th

-14-

Cir. 2003) *vacated on other grounds as moot*, 349 F.3d 1157 (9th Cir. 2003) (hearing is not warranted if petitioner's claims can "be resolved by reference to the state court record and the documentary evidence").

Petitioner asserts in his federal petition that counsel was aware that his mental state was in question, and that "in the case prior to the instant one, Mr. Dominguez's ability to stand trial, or accept a plea offer, was questioned." (Petition, Doc. 1 at 6.) Petitioner further explained that DOC was presently controlling his schizophrenia by administering psychotropic medication (Haldol and Denadril) that enables Petitioner to "marginally function" in his environment. (*Id.* at 7.) Petitioner previously asserted that his behavior at a criminal settlement conference (transcript found at Answer, Ex. M) provided evidence of his lack of competence, as well as prosecutor's statements during the sentencing hearing. (Answer, Ex. I.)

Petitioner submitted a sworn statement to the trial court avowing that he had informed his counsel that he was "having problems hearing voices" but received no help. (Answer, Ex. I, at 11.) Petitioner also avowed that he didn't comprehend what was occurring during the proceedings. (*Id.*) Petitioner further avowed that once he was placed in DOC, he was prescribed medication to help with the voices, and this medication helped him be able to rationalize more and understand the circumstances regarding his case. (*Id.*)

The expanded record indicates that Petitioner's trial counsel diligently pursued an investigation into Petitioner's mental health. Petitioner was represented by the same trial counsel, Stephanie Conlon, in a separate offense, '024106, and was out of custody in that offense at the time he committed the present offense. Based on Petitioner's statements to Ms. Conlon, during her

representation of Petitioner in '024106, that he was a client at Value Options[3], an umbrella group for social service agencies, and on counsel's review of the police reports, counsel requested copies of mental health records from Value Options and other social service agencies, and a competency evaluation was ordered. (Motion to Submit on the Record ("Motion"), Ex. N-O, Evidentiary Hearing Exhibits ("E.H.") Ex. 1.) Following a psychological evaluation, Dr. Tomas opined that Petitioner appeared "to be malingering symptoms of mental illness and cognitive disturbances." (E.H., Ex. 2.) Dr. Tomas "found no credible mental illness, defect or disability that would suggest grounds for a full [competency] evaluation," and recommended that the court not consider a full competency evaluation. (*Id*.) At a status conference on May 3, 2004, the trial court denied counsel's request for a full competency evaluation. (E.H., Ex. 5.) Eight days later, on May 11, 2004, Petitioner committed the offense at issue in these proceedings. (E.H. Ex. 8). Petitioner entered into a plea agreement in '024106 on May 25, 2004, and was sentenced on July 27, 2004. (E.H. Ex. 6, Motion, Ex. Q.)

      Petitioner's attorney counseled Petitioner to accept the plea offer in this case and Petitioner conveyed that he hoped the victims would not show up for trial. (E.H., Ex. 12, Entry dated 9/8/04.) Petitioner rejected the plea offer and counsel requested a settlement conference. (*Id*. Entries 10/15/04–10/18/04.) The settlement conference convened on October 19, 2004, and Petitioner formally rejected the plea offer, stating "I'll take my chances when I get there." (E.H.,Ex. 9, R.T. 10/19/04, at 15.) Thereafter, appointed counsel received Petitioner's mental health records from the Department of Corrections, and their health professionals noted that no mental health problems were evident. (E.H., Ex. 4.)

---

      [3]Value Options later notified counsel they had no record of providing services to Petitioner. (Motion, Ex. P.)

-16-

| | |
|---|---|
| 1 | The matter proceeded to a 2-day trial commencing on December 1, 2004, |
| 2 | and the trial transcripts contain no indicia of conduct suggestive of incompetence. |
| 3 | (E.H., Ex. 10–11; Trial Transcripts.) After Petitioner was found guilty he was |
| 4 | subsequently sentenced on January 4, 2005, and on February 2, 2005, the Office of |
| 5 | the Public Defender notified Petitioner that it had been appointed to represent him, |
| 6 | and directed him to notify it of any issues he wanted raised on appeal. (Answer, |
| 7 | Ex. E; Motion Ex. R.)  Petitioner did not contact the Office of the Public Defender |
| 8 | and on September 30, 2005, appellate counsel filed an appellate brief on |
| 9 | Petitioner's behalf. (Answer, Ex. D.) The State filed its answering brief on January |
| 10 | 10, 2006, and on that same day, appellate counsel received a letter from Petitioner |
| 11 | wherein Petitioner acknowledged, "In a way I should of written to you before you |
| 12 | wrote my brief." (E.H., Ex. 13.) Petitioner prefaced his next comment with the |
| 13 | following: "I really don't know if this will help me," and went on to state that he |
| 14 | had been hearing voices during his trial, but lied to the psychologist. (*Id*.) In |
| 15 | another letter Petitioner wrote to appellate counsel in October 2006, he asserted: "I |
| 16 | just hope I can get some help in getting my time reduce [sic] I don't think I |
| 17 | deserved the time I got for this case." (Motion, Ex. S.) |
| 18 | "The reasonableness of counsel's actions may be determined or |
| 19 | substantially influenced by the defendant's own statements or actions.... In short, |
| 20 | inquiry into counsel's conversations with the defendant may be critical to a proper |
| 21 | assessment of counsel's investigation decision." *Strickland*, 466 U.S. at 691. |
| 22 | There is no indication in counsel's records of any inappropriate behavior on |
| 23 | Petitioner's behalf that would suggest a mental health impairment.  There is no |
| 24 | indication in counsel's records that Petitioner told her he was "hearing voices," nor |
| 25 | did his demeanor before the trial court suggest incompetency. |
| 26 | There is simply no factual basis for Petitioner's claim that Ms. Conlon |
| 27 | failed to investigate his mental health status.  Even if Petitioner's avowal that he |
| 28 | -17- |

1 did tell counsel he was hearing voices is true, counsel thoroughly investigated Petitioner's competency in the contemporaneous case '024106. Based on the police report and Petitioner's statement that he was a client at value options, counsel requested records from Value Options as well as the Department of Corrections, and a competency evaluation of the Petitioner. All of the records received by Petitioner suggested that Petitioner was not being treated for a mental health issue, and the psychological evaluation suggested that Petitioner was malingering.

"[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgment." *Strickland*, 466 U.S. at 691. In the circumstances of this case, Counsel's investigation in the contemporaneous case, '024106, was reasonable and sufficient to thoroughly address the mental health issues related to Petitioner's competency in the present case.

Because petitioner has failed to show that trial counsel's performance was deficient, the court does not reach the prejudice prong of the Strickland test. See *Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998).

Accordingly, the Magistrate Judge recommends that the Court dismiss the habeas petition in its entirety.

**IV.  RECOMMENDATION**

This Court recommends that the District Court DISMISS this action in its entirety.

Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed.R.Civ.P. 72(b). If

objections are filed the parties should use the following case number: **CV 08-499-PHX-DGC**.

If objections are not timely filed, then the parties' right to *de novo* review by the District Court may be deemed waived. *See United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir).

DATED this 6th day of July, 2010.

_____
Bernardo P. Velasco
United States Magistrate Judge